12-1662-cv
Taveras v. UBS AG et al.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of February, two thousand thirteen.

PRESENT:    AMALYA L. KEARSE,
            CHESTER J. STRAUB,
            ROSEMARY S. POOLER,

*Circuit Judges*.

_____

DEBRA TAVERAS, on behalf of herself and all others similarly situated, MARY McKEVITT,

*Plaintiffs-Appellants*,

BRIAN LUDLUM, BRIAN STANISLAUS,

*Consolidated Plaintiffs-Appellants*,

-v.-                                              No. 12-1662-cv

UBS AG, PETER KURER, STEPHAN HAERINGER, SERGIO MARCHIONNE, ERNESTO BERTARELLI, GABRIELLE KAUFMANN-KOHLER, ROLF A. MEYER, HELMUT PANKE, DAVID SIDWELL, PETER SPUHLER, PETER VOSER, LAWRENCE A. WEINBACH, JOERG WOLLE, PETER A. WUFFI, CLIVE STANDISH, DAVID S. MARTIN, EDWARD O'DOWD, BARBARA AMONE, PER DYRVIK, THE RETIREMENT BOARD AND SAVINGS PLAN

1

COMMITTEE, JOHN DOES 1-30, UBS BOARD OF
DIRECTORS, EXECUTIVE BOARD OF UBS AG,
JOE SCOBY, ROBERT WOLF, MARTEN HOEKSTRA,
RAOUL WEIL, STEPHEN BAIRD, SIMON CANNING,
MICHAEL DALY, RICHARD DURON, URSULA
MILLS, JAIME TAICHER, UBS AMERICAS, INC.,
UBS FINANCIAL SERVICES, INC., UBFS BOARD OF
DIRECTORS, DIANNE FRIMMEL, JOHN HANNASCH,
ROBERT CHERSI, MICHAEL WEISBERG, EXECUTIVE
COMMITTEE OF UBS FINANCIAL SERVICES INC.,
UBS FINANCIAL SERVICES, INC. INVESTMENT
COMMITTEE, KEN CASTANELLA, EARLE DODD,
MARILEE FERONE, WILLIAM FREY, MATTHEW
LEVITAN, ED O'CONNOR, KEVIN RUTH, RHONDA
VIAPIANO,

*Defendants-Appellees*,

UBS AG, FINANCIAL SERVICES, INC., BENEFITS
ADMINISTRATIVE COMMITTEE OF THE UBS
FINANCIAL SERVICES INC. 401 K PLUS PLAN,
ROBERT McCORMICK, JOHN AND JANE DOES 1-20,

*Consolidated Defendants-Appellees*.

———————————————————————

| | |
|---|---|
| Appearing for Plaintiffs-Appellants: | MARK C. RIFKIN (Michael Jaffe, Beth A. Landes, *on the brief*) Wolf Haldenstein Adler Freeman & Herz LLP, New York, NY, Thomas J. McKenna, Gregory M. Egleston, Gainley & McKenna, New York, NY, Todd S. Collins, Ellen T. Noteware, Berger & Montague, P.C., Philadelphia, PA, Jeffrey A. Klafter, Klafter Olsen & Lesser LLP, White Plains, NY, *for Plaintiffs-Appellants*. |
| Appearing for Defendants-Appellees: | ROBERT J. GIUFFRA, JR. (Suhana S. Han, Matthew A. Schwartz, Thomas C. White, *on the brief*) Sullivan & Cromwell LLP, New York, NY, *for Defendants-Appellees*. |

———————————————————————

Appeal from two orders of the United States District Court for the Southern District of New York (Sullivan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the District Court is **AFFIRMED** in part and **VACATED** in part.

Plaintiffs-Appellants appeal from a final judgment entered on March 27, 2011 in the United States District Court for the Southern District of New York (Richard J. Sullivan, *Judge*) granting Defendants-Appellees' motion to dismiss in its entirety, and an order entered on March 26, 2012 denying Plaintiffs-Appellants' motion to alter or amend the judgment and for leave to amend their complaint. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented on appeal, which we reference here only as necessary to explain our decision to affirm in part. Further details can be found in our companion Opinion, filed today, addressing whether plaintiffs' breach of the duty of prudence claim triggers application of the presumption of prudence as to defendants' management of each of the two retirement savings plans in which plaintiffs participated.

I.    **Applicable Complaint**

On appeal, the parties dispute which set of allegations is subject to appellate review — those of the Consolidated Amended Complaint ("AC") or the Second Consolidated Amended Complaint ("SCAC"). The District Court evaluated the AC in granting defendants' Rule 12(b)(6) motion to dismiss. Plaintiffs, however, requested leave to file the SCAC in their motion to alter or amend the judgment, filed April 20, 2011. This request was denied by the District Court because, *inter alia*, it determined that plaintiffs' proposed amended allegations were futile, and could not cure the substantive deficiencies the court had identified in the AC. Because the District Court considered the merits of the SCAC to arrive at its futility determination, plaintiffs

3

argue that the SCAC is the applicable complaint for us to consider in deciding the issues they raise on appeal.

Permission for leave to amend should be freely granted. *See* Fed. R. Civ. P. 15(a)(2). Leave to amend may be properly denied, however, if the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). We review *de novo* a denial of a request for leave to amend when such a denial is based on a determination that the proposed complaint does not state a claim on which relief can be granted. *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185-86 (2d Cir. 2012).

Here, the record makes plain that the District Court's analysis below included an examination of the merits of the allegations in the SCAC. Therefore, we must consider whether the SCAC fails to state a claim upon which relief can be granted *de novo*. *Id.* For the purposes of this review we take as true all factual allegations pleaded in the SCAC. *See Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 85 n.1 (2d Cir. 2011). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

However, for the reasons that follow, we hold that the SCAC fails to state a claim upon which relief can be granted as to the Plus Plan. We hold also, as set forth in our companion Opinion, filed today, that the District Court erred in applying the presumption of prudence as to the SIP. This holding, however, is not based on any additional allegations set forth in the SCAC, but rather is based on our reasoning in *In re Citigroup ERISA Litig.*, 662 F.3d 128 (2d Cir. 2011) and *Gearren v. McGraw-Hill Cos.*, 660 F.3d 605 (2d Cir. 2011) ("*Gearren II*"). The error below

4

that we identify in our companion Opinion was a legal one, and our holding therein is not altered in any way by the additional allegations set forth in the SCAC.

Accordingly, we hold that the District Court ultimately did not exceed its allowable discretion in denying plaintiffs leave to amend and file the SCAC, save in one respect. *See, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave [to amend] for good reason, including futility . . . ."). The District Court did exceed its allowable discretion in denying plaintiffs leave to amend their complaint only insofar as its denial effectively prevented plaintiffs from shortening the alleged class period. (*See* JA-250 (alleging class period from March 13, 2007 to October 16, 2008 in AC); JA-600 (alleging class period from March 17, 2008 to October 16, 2008 in SCAC)). We see no persuasive reason to prevent plaintiffs from so amending their allegations, and thus hold that leave to amend the AC should be granted only insofar as plaintiffs' allegations should reflect the shorter class period set forth in the SCAC.

## II.     Count One: Duty of Prudence

In our companion Opinion, we hold that the relevant fiduciaries' management of the Plus Plan, but not the SIP, is entitled to the *Moench* presumption of prudence. *See Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995). As to the Plus Plan, then, we must determine whether plaintiffs have adequately alleged sufficiently "dire" circumstances at UBS during the class period so as to defeat this presumption and establish an abuse of discretion, thus stating a claim for breach of the duty of prudence upon which relief can be granted.[1] These dire circumstances must be alleged also to have been "objectively unforeseeable by the settlor," *In re Citigroup ERISA Litig.*, 662 F.3d at 140, such that an "adequate investigation" regarding those circumstances "would have revealed to a reasonable fiduciary that the investment at issue was

---

[1] Of course, knowledge would have to be adequately alleged as well. *In re Citigroup ERISA Litig.*, 662 F.3d at 141.

improvident," *Kuper v. Iovenko*, 66 F.3d 1447, 1460 (6th Cir. 1995).  Because we hold that the District Court appropriately applied the presumption of prudence as to the Plus Plan, the decision of the Plus Plan fiduciaries to continue offering UBS stock as an investment option should be reviewed for an abuse of discretion.  *In re Citigroup ERISA Litig.*, 662 F.3d at 140 ("[T]he abuse of discretion standard ensures that a fiduciary's conduct cannot be second-guessed so long as it is reasonable.").  A showing that the company made "bad business decisions is insufficient to show that [it] was in a 'dire situation.'"  *Id*.

We have not defined precisely the contours of what constitutes a "dire" situation sufficient to defeat the presumption of prudence.  In *In re Citigroup ERISA Litig.*, we found that plaintiffs had not adequately alleged a "dire situation" where the employer's stock had dropped "just over 50%," 662 F.3d at 141, and where Citigroup was alleged to have undergone a more than $350 billion government bailout on the "eve of a potential bankruptcy," Brief of Plaintiffs-Appellants at 11, *In re Citigroup ERISA Litig.*, 662 F.3d 128 (2d Cir. 2011) (No. 09-3804-cv).  In *Gearren II*, we held that a stock price drop of some sixty-four percent was insufficient to defeat the *Moench* presumption, even where plaintiffs had alleged that defendants "knowingly provided inflated ratings to financial products linked to the subprime-mortgage market," and that the discovery of these faulty ratings "led to the sharp drop in the price of McGraw-Hill stock."  660 F.3d at 609.  Given the comparable facts of this case, we need not further elaborate as to what circumstances qualify as "dire," as plaintiffs' allegations do not rise to such a level under our prior holdings.

Here, during the seven-month class period, from March 17, 2008 through October 16, 2008, plaintiffs allege that UBS suffered the consequences of its significant investments in subprime mortgage backed securities and other risky fixed income assets.  The SCAC alleges

6

that UBS's stock — in spite of all of the financial difficulties it faced stemming from its allegedly risky investment decisions and ensuing write-downs — lost about thirty percent of its value during the class period, and about seventy-four percent of its value from its twelve-month high in April of 2007. Without more, however, the decline in stock value alleged here, as well as the write-downs and bailout funds the company received, are insufficient to demonstrate that UBS faced a "dire situation."

Further counseling against a determination that a "dire situation" existed are the SCAC's own allegations that circumstances at UBS during the class period were not in complete decline. Plaintiffs allege, for example, that UBS was able to raise some $27 billion in capital during and near the class period from outside investors, a sign that UBS's likelihood of financial recovery was generally viewed as favorable. The SCAC alleges also that UBS was able to significantly increase its cash on hand to meet possible increasing client demand to withdraw deposits held by the bank.

Nothing set forth in the SCAC permits a plausible inference that at any point during the class period UBS was, objectively, no longer a viable company. We agree with the District Court that the SCAC fails to adequately allege that UBS "reach[ed] the brink of imminent collapse during the new putative class period in the . . . SCAC." *In re UBS AG ERISA Litig.*, No. 08 Civ. 6696, 2012 WL 1034445, at *8 (S.D.N.Y. Mar. 23, 2012). We therefore affirm the dismissal of plaintiffs' breach of the duty of prudence claim as to the Plus Plan.

## III. Count Two: Duty of Candor

ERISA does not impose an affirmative duty on fiduciaries to disclose information regarding the company's financial condition to ERISA plan participants. *In re Citigroup ERISA Litig.*, 662 F.3d at 143 (holding that fiduciaries have no duty to "provide participants with nonpublic information pertaining to specific investment options"). It does, however, provide for

liability when fiduciaries make a misstatement that they know "lack[s] a reasonable basis in fact." *Id.* at 144 (internal quotation marks omitted). Statements made in a "corporate, rather than ERISA fiduciary[ ] capacity" do not lead to liability for breach of the duty of candor under ERISA, however. *Gearren II*, 660 F.3d at 611.

As the District Court held, beyond asserting a non-actionable duty to affirmatively disclose information, the SCAC only alleges misstatements and omissions made by defendants that appeared in SEC filings and press releases. These statements were all made by defendants in their corporate fiduciary capacities, not their ERISA fiduciary capacities, and thus cannot lead to liability for a breach of the duty of candor under ERISA. *See In re Citigroup ERISA Litig.*, 662 F.3d at 144. Further, the allegations in the SCAC regarding what, if any, alleged misstatements or omissions occurred are vague, and do not adequately allege the basis of defendants' purported knowledge (actual or constructive) that the particular statements were false or misleading at the time they were made. *See Gearren II*, 660 F.3d at 611. Thus, we affirm the District Court's dismissal of plaintiffs' duty of candor claims as to both the SIP and Plus Plan.

## IV.    Count Four: Conflicts of Interest

The District Court held that plaintiffs' conflict of interest claim was "essentially a rehashing of their duty of prudence and duty of candor claims," and noted that "[t]o the extent [it] could be construed as an independent cause of action, it still fails to state a claim." *In re UBS AG ERISA Litig.*, No. 08 Civ. 6696, 2011 WL 1344734, at *11 (S.D.N.Y. Mar. 24, 2011). We agree, and hold that the conflict of interest claim is not adequately alleged as to either the SIP or the Plus Plan. The SCAC does not adequately allege anything beyond that (1) the alleged fiduciaries of each plan were corporate officers and directors, and (2) this fact led those

8

fiduciaries to place their own interests "above" those of the plans and their participants. The SCAC is devoid of any particularized allegations as to how such prioritizing took place or on what basis it occurred. An alleged ERISA fiduciary's mere officer or director status, taken alone, is insufficient to state a claim for conflict of interest. *See In re Citigroup ERISA Litig.*, 662 F.3d at 145-46 ("Under plaintiffs' reasoning, almost no corporate manager could ever serve as a fiduciary of his company's Plan. There is simply no evidence that Congress intended such a severe interpretation of the duty of loyalty."). The District Court therefore did not err in dismissing this claim.

## V.      Counts Three, Five, and Six: Secondary Liability

The District Court held that plaintiffs' failure to state a claim for primary liability under ERISA was fatal to their three claims for secondary liability as well. As to the Plus Plan, we agree.[2] *See id.* at 145 (noting that secondary liability claims under ERISA "cannot stand if plaintiffs fail to state a claim for relief on [any primary liability theory]"). Accordingly, we affirm the District Court's dismissal of Counts 3, 5, and 6 as to the Plus Plan.

## CONCLUSION

Plaintiffs' other arguments on appeal are without merit. For the foregoing reasons, the orders of the District Court are AFFIRMED in part and VACATED in part.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court

---

[2] We address the secondary liability claims raised as to the SIP in our companion Opinion, filed today, and hold that Counts 3, 5, and 6 of the AC warrant further proceedings as to the SIP consistent with that Opinion.

9