17-1957-cv
*Yamashita v. Scholastic Inc.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of August, two thousand nineteen.

PRESENT:
> ROSEMARY S. POOLER,
> ROBERT D. SACK,
> SUSAN L. CARNEY,
> > *Circuit Judges.*

———————————————————————————

MICHAEL YAMASHITA, MICHAEL YAMASHITA, INC.,

> *Plaintiffs-Appellants,*

> > v.                                                                 No. 17-1957-cv

SCHOLASTIC INC.,

> *Defendant-Appellee.**

———————————————————————————

FOR APPELLANTS:                    MAURICE HARMON (Christopher Seidman, Gregory N. Albright, *on the brief*), Harmon Seidman Bruss & Kerr, LLC, Grand Junction, CO.

---

\* The Clerk of Court is directed to amend the official caption to conform to the above.

FOR APPELLEE:               EDWARD H. ROSENTHAL (Craig B.
                            Whitney, *on the brief*), Frankfurt Kurnit
                            Klein & Selz, P.C., New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Forrest, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on June 7, 2017, is **AFFIRMED**.

Plaintiffs-Appellants Michael Yamashita and Michael Yamashita, Inc. (collectively, "Yamashita") appeal from a judgment entered principally in favor of Defendant-Appellee Scholastic Inc. ("Scholastic"). Yamashita contends that the District Court erred by: (1) dismissing his one-count Original Complaint, which alleged that Scholastic exceeded the terms of the limited licenses it purchased from a stock photography agency, Corbis Corporation ("Corbis"), in order to use Yamashita's photographs; (2) ruling that his proposed amendment to the copyright infringement claim did not cure the defects in the Original Complaint and denying leave to amend this claim; and (3) denying leave to plead four new common-law claims.[1] We address the first two of these arguments in the Opinion that accompanies this Order. Here, we focus on the third.

We review *de novo* a district court's denial of leave to amend a complaint that rests on a conclusion that amendment would be futile. *See Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017). In this Order, we assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, and refer to them here only as necessary to explain our decision to affirm the district court's judgment.

In addition to attempting to replead his copyright infringement claim in the Proposed Amended Complaint ("PAC") that accompanied his motion for reconsideration, Yamashita sought to add four common-law claims that did not appear in the Original Complaint:

---

[1] Neither party appeals from that part of the District Court's judgment that dismissed Yamashita's claim as to the Row-80 image under the parties' stipulation under Fed. R. Civ. P. 41.

2

(A) Breach of contract; (B) "Bailment/breach of duties of bailee"; (C) "Conversion"; and (D) "Accounting." *See* J.A. at 312–18, ¶¶ 25–65. We address each in turn.

### A. Breach of contract

The District Court denied leave to add the proposed breach-of-contract claim in part on the ground that Yamashita is not a party to the contracts executed by Corbis and Scholastic and whose use limits Yamashita claimed were breached. *See* Special App. at 4. (These were the "Preferred Vendor Agreements," or "PVAs," between Corbis as vendor and Scholastic as publisher.) Yamashita argues that this was error because the ruling conflicted with the prior decision of the United States District Court for the District of New Jersey, in which that court transferred the proceedings to the Southern District of New York. As a basis for that transfer, the New Jersey court determined that Yamashita was bound by the PVAs' forum selection clause identifying the Southern District of New York as the venue for resolving disputes. *See Yamashita v. Scholastic Inc.*, No. 16-cv-3839 (SRC), 2016 WL 6897781, at *2 (D.N.J. Nov. 21, 2016) ("Knowledge of the agreement between Corbis and Scholastic is thus imputed to Plaintiffs, since Plaintiffs are principals and Corbis is their agent.") Even if Yamashita's argument has merit, however, we may "affirm [the district court's decision] on any basis supported by the record." *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2014). We find other support for the district court's rejection of this claim.

The PAC alleges that Scholastic breached its contract with Corbis by "refus[ing] to provide the usage information that Yamashita requested." J.A. at 315, ¶ 41. Yamashita alleges that he requested information from Scholastic regarding "print quantity, geographic distribution, language, and electronic uses of Yamashita's images by Scholastic and any third parties to whom it supplied his images," J.A. at 408; he identified four PVA provisions as having been breached by Scholastic when it failed to comply. These were the following.

First, the "Terms and Conditions" attached to the 2001 PVA provided as follows: "**Copies**: As a condition subsequent to this Agreement, Client shall provide to Corbis, upon

3

first release or publication, free of charge, three (3) copies of any product or publication created by Client in which the images are used." J.A. 313–14, ¶ 33 (quoting Ex. 7).

Second, the "Corbis Traditional Licensing Terms and Conditions" attached to the 2004 PVA provided in its "Attachment A": "**Copies**: At Corbis' request, you shall provide to Corbis free of charge, up to three (3) copies of any printed product or publication you create using the Images, or if electronic use is permitted, the URL and any required passwords or the screen captures for our records." J.A. at 314, ¶ 34 (quoting Ex. 8).

Third, paragraph 12 of the "Corbis / Scholastic Library Publishing Content License Agreement" attached to the 2008 and 2011 PVAs stated: "**12. Payment/Reporting.** You hereby agree to and are required to pay Corbis for all Content that You obtain under the terms of this Agreement, regardless of whether You use the Content (except as may be provided in Section 15 entitled 'Cancellation/Termination'). This may, as set forth in the applicable Invoice, include an obligation to pay Corbis a use[-]based royalty and to submit to an accounting or other records verifying Your use of the Content." J.A. at 314, ¶ 35 (quoting Exs. 9–10) ("¶ 35(a)").

Fourth, the "Corbis / Scholastic Library Publishing Content License Agreement" attached to the 2008 and 2011 PVAs provided: "**16. Copies.** At Corbis' reasonable request, You shall provide Corbis free of charge one (1) copy of any use made of the Content as authorized hereunder." J.A. at 314, ¶ 35 (quoting Exs. 9–10) ("¶ 35(b)").

None of these provisions, however, provides a foundation for the breach-of-contract claim Yamashita has pleaded. He has not pleaded a breach of ¶ 33 because he did not allege that Scholastic failed to provide *Corbis* with three copies of the publications in which his images appeared. He has not pleaded a breach of ¶ 35(a) because this provision requires Scholastic to provide an "accounting or other records" only "*as set forth in the applicable Invoice.*" Yamashita did not attach any invoices setting forth an accounting obligation, nor has he alleged that any invoice contained such a requirement. Last, Yamashita's allegations with respect to ¶¶ 34 and 35(b) also fall short. These provisions permit Corbis to request a copy of any use of Yamashita's images. Even assuming that Yamashita may stand in Corbis's

4

shoes for purposes of enforcing the PVA, he has not alleged that he requested copies of the uses made of his images. Instead, he requested information about "print quantity, geographic distribution, language, and electronic uses of Yamashita's images." J.A. at 408. Accordingly, the PAC does not plead a plausible breach-of-contract claim.

### B.     Bailment

We turn next to Yamashita's bailment claim.[2] Yamashita argues that the District Court erred in denying him leave to plead this claim. He faults the court for concluding that he did not have the requisite bailment relationship with Scholastic. We identify no error in that conclusion.

Even if, as Yamashita urges, "a bailment contract may be implied," Appellants' Reply Br. at 28 (internal quotation marks omitted), any potential bailments implied by the facts as stated in the PAC rest on the PVAs and Invoices executed between Corbis and Scholastic. *See, e.g.*, J.A. at 316, ¶ 45 (incorporating by reference allegations regarding breach-of-contract claim); *id.* at 317, ¶ 51 ("Scholastic's rights to use the Bailed Property were limited as provided in the PVAs and Corbis invoices."); *id.* at ¶ 55 (referencing PVAs and Corbis Invoices). Although Yamashita alludes to contractual restrictions on Scholastic's use of the licensed images, Yamashita has not plausibly pleaded that the PVAs give rise to a bailment between him and Scholastic. Indeed, the 2001 PVA between Corbis and Scholastic expressly provides that the "Agreement is not considered a bailment." J.A. at 64, ¶ 5.

Apart from the use limitations to which he points, Yamashita does not highlight any provisions of the PVAs or of any relevant invoices suggesting that Corbis and Scholastic intended to create a bailment relationship. *See* 8A Am. Jur. 2d Bailments § 1 ("[A] bailment is ordinarily created by the agreement of the parties. . . ."). Nor has Yamashita alleged a duty on the part of Scholastic to account to him directly for its uses of the images, apart from the contract-based theories we rejected above. *See* 9 N.Y. Jur. Bailments & Chattel Leases § 1

---

[2] Yamashita is a New Jersey resident. J.A. at 11. The District Court for the District of New Jersey applied New York law in its written decision transferring the case, and the parties' briefs cite to New York law in their arguments about the common-law claims; they do not address choice of law. We therefore assume without deciding that New York law applies to these claims.

("It is the element of lawful possession, however created, and *duty to account for the thing* as the property of another that creates the bailment . . . ."). We therefore identify no error in the District Court's denial of leave to plead a bailment claim.

### C. Conversion

Yamashita also contends that the District Court erred in denying him leave to plead a claim for conversion. Oddly, Yamashita alleges that Scholastic converted his property not by engaging in unauthorized copying of his photographs, but rather "by failing and refusing to disclose to Yamashita all of the uses that Scholastic has made of the Bailed Property." J.A. at 318, ¶ 60. Yamashita's reply brief on appeal clarifies that this claim derives from his breach-of-contract and bailment claims. Appellant's Reply Br. at 35–36 (arguing conversion claim is not preempted and characterizing it as a "bailment-related claim[ ]"). Having already concluded that Yamashita's breach-of-contract and bailment claims fail, we now conclude that his conversion claim fails as well. The District Court did not err in denying leave to plead it.

### D. Accounting

Last, we turn to Yamashita's demand for an accounting. Much like his conversion claim, Yamashita grounds Scholastic's alleged "duty to account to Yamashita for all of [its] uses of the Bailed Property" in "the terms of the PVAs and/or the law of bailment." J.A. at 318, ¶ 64. We have already rejected Yamashita's arguments that he plausibly alleged a breach-of-contract claim (under the PVAs) or a bailment-based claim (under the law of bailment). Accordingly, pleading this claim, too, would have been futile, and the District Court did not err in denying him leave to do so.

\* \* \*

For the foregoing reasons, as well as those set forth in the Opinion that accompanies this summary order, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6